UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PSP FRANCHISING, LLC and
PSP DISTRIBUTION, LLC,

        Plaintiffs,

v.

ELMER WAYNE DUBOIS,
PETS OF WELLINGTON, INC.,
MONTE D. DUBOIS and
MARK G. DUBOIS,

        Defendants.
_____/

CASE NO. 12-CV-11693
JUDGE STEPHEN J. MURPHY
MAGISTRATE JUDGE PAUL J. KOMIVES

### REPORT AND RECOMMENDATION REGARDING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT, PERMANENT INJUNCTION AND ATTORNEY'S FEES PURSUANT TO FED. R. CIV. P. 55(b)(2) (Doc. Ent. 15)

**I.** **RECOMMENDATION:** The Court should immediately grant plaintiffs' motion for default judgment to the extent it seeks the issuance of a permanent injunction and then refer the case back to me to schedule and conduct an evidentiary hearing regarding the amount of damages and attorney's fees being sought pursuant to Fed. R. Civ. P. 55(b)(2).

**II.** **REPORT:**

**A.** *Procedural Background*

    **1.** The original complaint in this case was filed on April 16, 2012. Doc. Ent. 1. On April 26, 2012, all four defendants were served with the summons and complaint. *See* Doc. Entries 8, 9, 10 & 11.

    **2.** On May 14, 2012, plaintiffs PSP Franchising, LLC and PSP Distribution, LLC filed

an amended complaint against the defendant Elmer Wayne DuBois and co-defendants Pets of Wellington, Inc., Monte D. Dubois and Mark G. Dubois. Doc. Ent. 7.

**3.** The factual background is set forth in paragraphs 9-49 of the complaint, and is divided into six subparts.

**(a)** the first subpart is entitled "The PSP Franchise System." Doc. Ent. 7 ¶¶ 9-12. Plaintiffs allege that they are the franchisor of retail pet food and supply stores operating under the Pet Supplies Plus trademark and proprietary business system and own the trademark "Pet Supplies Plus" and the trademark "Pet Supplies plus Your Pet's Favorite Store" and related design which are registered with the United States Patent and Trademark Office. PSP uses and licenses the use of these proprietary marks in connection with the offering and sale of Pet Supplies Plus Store franchises..PSP's franchisees are licensed to use these proprietary marks to operate Pet Supplies Plus stores utilizing PSP's proprietary operating system pursuant to the terms and conditions of the Pet Supplies Plus franchise agreement that is entered into by and between PSP and each franchisee. These franchisees are also licensed to use PSP's proprietary business methods, policies, procedures, pricing policies, sales materials, supplier information, confidential information, standards, and specifications for establishing and operating Pet Supplies Stores (the PSP System) which is disclosed to PSP franchisees in confidence pursuant to their respective franchise agreements.

**(b)** the second subpart of the factual background is entitled "The Franchise Agreement." Doc. Ent. 7 ¶¶ 13-27. On June 19, 2008 defendant Elmer Wayne DuBois and PSP's predecessor, Pet Supplies "Plus"/U.S.A., Inc., entered into a franchise agreement under which Dubois obtained the right and undertook the obligation to operate a Pet Supplies Plus Store in Wellington, Florida for a term of five years. At the same time that DuBois signed the Franchise Agreement, he also

executed an Assignment and Assumption Agreement by virtue of which he assigned all of his rights and interest in this Franchise Agreement to co-defendant Pets of Wellington Inc. (PWI) but agreed that he would remain personally liable to PSP for all PWI's obligations under the Franchise Agreement. DuBois and PWI were granted a protected territory encompassing a five mile radius around the location of the PWI store in Wellington. These defendants agreed to pay PSP a royalty of $2,000 per month plus 2% of Gross Sales of the franchised business in excess of $1,000,000 per year. They also agreed to pay PSP a late charge equal to the lesser of 1.5% per month or the highest permissible interest rate and to submit to PSP on a weekly basis gross sales reports of the Franchised Business for the immediately preceding week. They also agreed that the confidential operating manual and all other manuals developed and approved by PSP for use with the operation of Pet Supplies Plus Stores would remain the sole property of PSP and would only be used during the term of the Franchise Agreement and that their use of the proprietary marks outside the scope of the Franchise Agreement without PSP's prior written consent would be an infringement of PSP's rights in these marks and that even after the termination of the Franchise Agreement they would not infringe upon the marks. These defendants also agreed that PSP was the owner of the PSP System and that all information revealed to them during the term of the Agreement would constitute trade secrets of PSP and that such information would be disclosed to them in confidence only for the purpose of operating a Pet Supplies Plus Store. These defendants agreed that during the term of the Franchise Agreement and after its termination they would not reveal or use any trade secret in connection with any other business or venture in which they might have a direct or indirect interest and that for a period of two years following the termination of the Agreement neither they nor any of PWI's shareholders and officers would own, maintain, operate, engage in or have any interest in

any pet food or pet supply business, or any retail business store that offers for sale primarily pet food or pet supplies which is, or is intended to be, located within the protected territory or within a radius of five miles of the location of any other Pet Supplies Plus Store that exists or is operating under the PSP System as of the date of termination of the Franchise Agreement. These defendants agreed that in the event of their default of the confidentiality provisions or a post termination covenant contained in the agreement PSP would be entitled to obtain in any court of competent jurisdiction both temporary and permanent injunctions prohibiting defendants from breaching the confidentiality and restrictive covenants contained in the Franchise Agreement. They also agreed that upon the termination of the Franchise Agreement they would (a) immediately and permanently discontinue all use of the proprietary marks and the PSP System and take all steps to "de-identify" the Franchised Business; (b) discontinue using all items that contain the proprietary marks and remove from the Location all signs, advertising and promotional items containing these marks; (c) assign the franchised business' telephone number to PSP; (d) pay PSP all outstanding amounts owed under the agreement (e) comply with the post termination covenant and confidentiality provisions in Section 11 of the agreement; and immediately return to PSP all operating manuals. These defendants also agreed that they would be jointly and severally liable for all sums due to PSP or its subsidiaries or affiliated companies under the Franchise Agreement or any other agreement between defendants and PSP or its subsidiaries and affiliated companies. Lastly, these two defendants agreed to pay PSP all costs incurred by PSP, including attorney's fees, in enforcing the provisions of the Franchise Agreement.

  **(c)**  The third subpart of the factual background is entitled "Defendants Mark G. DuBois and Monte D. DuBois' involvement in PWI." Doc. Ent. 7 ¶¶ 28-32. Plaintiffs allege that these two

defendants, the sons of defendant Elmer Wayne DuBois, are officers and directors of defendant PWI (and were identified as such in annual reports filed on April 8, 2010 and April 25, 2011) by defendant Elmer Wayne DuBois with the Florida Secretary of State) and actively participated in PWI's operation of the Franchised Business. Accordingly, plaintiffs allege, these two defendants are subject to the post termination covenant contained in the Franchise Agreement.

**(d)** The fourth subpart of the factual background is entitled "Defendants' Defaults under the Franchise Agreement." Doc. Ent. 7 ¶¶ 33-35. Plaintiffs allege that from May 2010 through January 26, 2012 the principal defendants (Elmer Wayne DuBois and PWI) failed to pay PSP the royalties required under the Franchise Agreement in a total amount of $42,413. In addition, these defendants failed to pay PSP the sum of $15,166 for merchandise delivered to the Franchised Business. PSP sent a notice of default dated November 23, 2011 detailing the defendants' material defaults under the agreement and provided them a period of 30 days from receipt of this notice to cure their defaults.

**(e)** The fifth subpart of the factual background is entitled, "Termination of the Franchise Agreement and Defendants' Continued Operation of the Franchised Business[.]" Doc. Ent. 7 ¶¶ 36-39. After the defendants failed to cure their defaults within this thirty-day period, PSP, in a letter dated January 26, 2012, terminated the Franchise Agreement. In this termination notice, PSP demanded that defendants Elmer Wayne DuBois and PWI and its officers and directors comply with all of the post-termination obligations set forth in the Franchise Agreement, including the ceasing of all use of the proprietary marks and the PSP System and pay PSP past due royalties in the amount of $42,413 and PSP Distribution the sum of $16,609 for merchandise delivered to them. Plaintiffs also allege that despite the termination of the Franchise Agreement, the defendants "continue to

operate the Franchised Business at the Location using the Proprietary Marks and the PSP System.

**(e)** The sixth subpart of the factual background is entitled "The Continuing Harm." Doc. Ent. 7 ¶¶ 40-49. Plaintiffs assert that the defendants "continue to operate the Franchised Business at the Location using the Proprietary Marks and the PSP System (the "Competing Business") and continue to utilize the telephone number of the Franchised Business that is advertised in conjunction with the Proprietary Marks." The defendants are representing to customers of the Competing Business that it is affiliated with the PSP System. Their wrongful acts "have caused direct financial injury to PSP and PSP Distribution and the existing Pet Supplies Plus Stores operating in proximity of the Competing Business." They are intentionally trading on PSP's Proprietary Marks and are deliberately appropriating and diluting PSP's goodwill for their own benefit. Their operation of the competing business is a violation of the post termination covenant. Plaintiffs do not have the ability to oversee the quality of the products and services being sold by the defendants and cannot ensure that the competing business's products conform to PSP's standards and specifications. Defendants willfully intend to trade on PSP's reputation in connection with their operation of the competing business and have caused and continue to cause irreparable damage to PSP as a result of their misuse of the Proprietary Marks, including, but not limited to, damage to PSP's business, reputation, the goodwill related to the Proprietary Marks and to PSP's customer relations. The defendants' continued operation of this business has caused and will continue to cause irreparable injury to plaintiffs because business will be diverted from PSP and its authorized franchisees, the goodwill related to the Proprietary Marks will be diluted and taken from PSP's control and it will lose profits and revenues that cannot readily be calculated. Plaintiffs conclude their factual background allegations by asserting that they have no adequate remedy at law because

they cannot be adequately compensated for the deprivation and dilution of the consumer recognition and goodwill built up under the Proprietary Marks and PSP System as a result of the defendants' wrongful and deliberate conduct.

4.      The complaint contains four causes of action: Count One is entitled "Trademark Infringement and Common Law Unfair Competition."  Doc. Ent. 7 ¶¶ 50-53.  Count Two is entitled "Breach of Contract  - Royalty Fees And Product Costs."  Doc. Ent. 7 ¶¶ 54-58.  Count Three is entitled "Breach of Contract - Post-Termination Obligations of the Franchise Agreement."  Doc. Ent. 7 ¶¶ 59-63.  Count Four is entitled "Accounting."  Doc. Ent. 7 ¶¶ 64-67.  All four counts refer to and rely on the factual background allegations summarized above in this report and recommendation. The relief sought is set forth, but is also contained in the proposed judgment (Doc. Ent. 15-1) attached to plaintiffs' motion for default judgment (Doc. Ent. 15) and will not be summarized here.

5.      On May 15, 2012, attorney Keith Kanouse (FL) accepted service of the amended complaint on behalf of the defendants.  Attorney Kanouse's acceptance of service is dated May 16, 2012.  Doc. Ent. 12.

**B.**    *The Clerk's Entry of Default*

Because no appearances were filed on behalf of any of the defendants, plaintiffs requested that the Clerk of the Court enter defendants' default.  Doc. Ent. 13.  The Clerk's entry of default as to all four defendants was entered on September 27, 2012.  Doc. Ent. 14.

**C.**    *The Instant Motion*

On October 5, 2012, plaintiffs filed a motion for default judgment, permanent injunction and attorney's fees pursuant to Fed. R. Civ. P. 55(b)(2).  Doc. Ent. 15.  Attached to this motion is a proposed judgment.  Doc. Ent. 15-1.

This motion was referred to me on October 11, 2012.  Doc. Ent. 16.  On October 16, 2012, I issued an order (Doc. Ent. 17) requiring that any response to this motion must be filed by November 9, 2012.  To date, no response has been received.

**D.    *Discussion***

**1.**    As requested in plaintiffs' memorandum of law submitted in support of its motion for entry of a default judgment (*see* Doc. Ent. 15 at 7), in light of the clerk's entry of default (Doc. Ent. 14) because defendants, after being served with the amended complaint (Doc. Ent. 7) summarized above in this report and recommendation, failed to answer, move or otherwise respond to the amended complaint (Doc. Ent. 7) or to the motion for entry of a default judgment (Doc. Ent. 15), this court may and I conclude should find that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.  *Antoine v. Atlas Turner, Inc.*, 66F.3d 105, 110-11 (6th Cir. 1995).  Federal Rule of Civil Procedure 8(b)(6), entitled "Effect of Failing to Deny," states that an allegation other than one relating to the amount of damages is admitted if a responsive pleading is required and the allegation is not denied.  Plaintiffs have alleged and defendants admit by their failure to deny that they have breached the terms of the Franchise Agreement as well as their willful use and infringement of PSP's trademarks and business system.

**2.**    Plaintiffs seek entry of a money judgment in the amount of $93,022.00 as well as the attorney's fees and costs incurred in bringing this action.  Doc. Ent. 15 at 14-17.

**3.**    The court should immediately issue an injunction as set forth in the proposed judgment submitted by plaintiffs (Doc. Ent. 15-1) and then refer the case back to me to schedule and hold a hearing at which the parties may submit evidence regarding the amount of the damages and attorney's fees being claimed.

**(a)** Plaintiffs' memorandum in support of its motion for issuance of a permanent injunction persuasively argues that all the requirements for issuance of an injunction enjoining the defendants from using the proprietary marks or any mark confusingly similar thereto have been met. Doc. Ent. 15 at 17-22:

**i.** Plaintiffs have demonstrated actual success on the merits with respect to its trademark infringement claim in light of defendants' default which has transformed the allegations in the complaint into undisputed facts that plaintiffs own the marks, that they are valid and legally protectable and have been properly registered with the USPTO in accordance with the Lanham Act and that defendants have engaged in unauthorized use of these marks, including the continued operation of a competitive pet supplies and related services business under the registered mark while holding themselves out to be part of the plaintiffs' franchise system; and that the defendants' actions are likely to cause confusion with respect to the unauthorized products and services that are being offered by them since they provide the same products and services under the identical marks. Likelihood of confusion is clearly established as well by the fact that defendants are using the marks as a former franchisee of plaintiffs. The court should therefore conclude that defendants' use of the marks is likely to cause confusion among customers regarding defendants' affiliation with plaintiffs and plaintiffs' system and that they have demonstrated success on the merits of their trademark claim.

**ii.** Plaintiffs have also shown that they will suffer irreparable harm if an injunction is not issued enjoining defendants from continuing to use the marks. As already noted, a likelihood of confusion has been clearly demonstrated because defendants are continuing to use the marks and holding themselves out to be a franchisee despite the termination of their franchise agreement.

Plaintiffs no longer have control over defendants' operation of their competitive business under the proprietary marks and can no longer ensure that defendants are complying with systems standards and specifications associated with products, services and display of the marks and state and local laws, regulations and permit requirements associated with providing such services. In addition plaintiffs will also continue to lose control of its marks if injunctive relief is not issued because this will almost assuredly threaten the economic value of the goodwill and reputation associated with the marks and plaintiffs' system generally.

   **iii.**  The granting of a permanent injunction will not result in any greater harm to the defendants for the reasons set forth in plaintiffs' memorandum (Doc. Ent. 15 at 21-22) and in light of defendants' failure to respond to the allegations either of the complaint or of the motion for default judgment.

   **iv.**  The granting of a permanent injunction is in the public interest in light of the fact that defendants are collectively a former franchisee blatantly continuing to operate their competitive business and using plaintiffs' marks in defiance of the fact that their franchise agreement has been lawfully terminated.

   **(b)**  As set forth in plaintiffs' memorandum (Doc. Ent. 15 at 22-27), the permanent injunction should also enjoin defendants from continued operation of any competitive business which violates the post-term covenant not to compete set forth in the original franchise agreement.

## III.  NOTICE TO PARTIES REGARDING OBJECTIONS:

   The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a

waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231, American Federation of Teachers, AFL-CIO*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge. Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives<br>
PAUL J. KOMIVES<br>
UNITED STATES MAGISTRATE JUDGE

Dated: 2/4/13

---

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on February 4, 2013.

s/Eddrey Butts<br>
Case Manager